CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 11, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA

## Roanoke Division

| | |
|---|---|
| William A White | |
| Petitioner | |
| v. | Case No: 7:18cr 54 |
| United States Of America | Crim No: 08-cr-054 |
| Respondent | |

## MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE PURSUANT TO 28 USC §2255

Comes Now the Petitioner, William A White, and I hereby Move this Court to Vacate, Set Aside or Correct the Sentence in this matter Pursuant To 28 USC §2255. I claim the following grounds for relief:

**#1**: My convictions for transmitting a threat in interstate commerce in violation of 18 USC §875(c), both Count One, as regards Jennifer Petsche, and Count Five, as regards Kathleen Kerr, should be vacated as obtained in violation of both US Const Amend I's right of free speech and US Const Amend V and VI's right to a properly instructed jury pursuant to the new rule of Constitutional law announced by Counterman v. Colorado 143 SCt 644 (2023).

-1-

In support, I state as follows:

Factual Background

Count 5

1) Between 2005 and 2008, I worked to disrupt the FBI's fake "White supremacist" movement by, first, in 2005, joining a group the FBI had created, the National Socialist Movement ("NSM"), and, then, in 2006, founding my own "extreme" looking group the American National Socialist Workers Party ("ANSWP"). In conjunction with this, I published a website, Overthrow.com. see, eg, United States v. White 670 F3d 498 (4TH Cir 2012) @ LEXIS p.3. My audience was not inclined to violence. trial transcript for 12/14/2009 ("12/14 trans") p.67-69. I didn't intend to harm anyone. 12/14 trans p.70. And, neither I nor anyone associated with me had ever been involved in violence. 12/14 trans p.20.

2) On October 31, 2007, I organized a protest against Kathleen Kerr, an administrator at the University of Delaware who was conducting a racist anti-white "diversity" program. 12/16 trans p.7 Exh 53; see also United States v. White 2010 US Dist LEXIS 9603 (WD Va 2010) @ LEXIS p.34-36. While organizing this, I called her office at 10:40 AM from an unblocked cell phone number. 12/14 trans p.45-47. At the time, the university was receiving several calls a minute and this same number had been posted on my

website. 12/14 trans p. 25-27; 12/16 trans p. 49. I made several other phone calls to Kerr's home and relations without threatening anyone. 12/16 trans p. 12-14. And, my website post incorrectly identified Kerr's husband as Kenneth Kerr, not his correct name of Chris Kerr. 12/16 trans p. 44-46, 55-56.

3) The University of Delaware's police chief testified that Carole Bedgar, Kerr's secretary, had reported receiving a death threat against Kerr, the threat at issue, before 10:15 AM. 12/16 trans p. 22-28. Bedgar testified that someone claiming to be me called her and said that Kerr should be hunted down and shot about 10:45 AM. 12/16 trans p. 47-48, 58-60. This person identified Kerr's husband as Chris, not Kenneth. 12/16 trans p. 44-46, 55-56. Bedgar took notes on this call's caller ID number and turned them over to the FBI, who lost them. 12/16 trans p. 37-38, 45, 48-51. (We know from an inadmissible police report that the notes showed the call originating in Silver Spring, Maryland, while my cell number was in Roanoke, Virginia; Bedgar testified she (now) thought the call came from a blocked number). Bedgar's testimony was also weird and melodramatic.

4) During trial in this matter, I repeatedly expressed to my attorneys, David Damico and Ray Ferris, that I wished to testify that I did not intend to physically threaten Kerr. Sworn Declaration Of William A White, para 2. Damico and Ferris persuaded me not to testify solely because my testimony as to mens rea would be irrelevant and likely excluded. White

-3-

Decl para 3. Had I testified, I would have testified that my internet post and phonecall were solely intended to further the organizing of an aggressive and confrontational protest of Kerr. White Decl para. 4-7. I did not intend to physically threaten Kerr and to this day do not believe that she or anyone else involved in this prosecution, including the FBI, DOJ and this Court, really believe that she felt physically threatened. White Decl para 8.

Count 1

5) In 2005, I had a dispute with a creditor. 12/10/09 trans p. 107-109 As a result of this dispute, Citigroup exercised a (now unlawful) cross-default provision on my credit card loan to raise my interest rate from under 10% to over 30%. 12/10/09 trans p. 107-109. I sued Citigroup. 12/10/09 trans p. 107. It settled. 12/10/09 trans p. 85-86. Citigroup agreed to remove defamatory statements it made about me from my credit reports. 12/10/09 trans p. 87, 92. But, for some odd reason, I just decided to "threaten" a random Citigroup employee, Jennifer Petsche, who had absolutely nothing to do with this dispute (probably because anti-Semitism had driven me insane). 12/10/09 trans p 95 and Exh 14

6) Again, I wanted to testify about Petsche and Damico and Ferris persuaded me not to because my mens rea and the context which would have established my mens rea were irrelevant and would likely have

-4-

been excluded. White Decl, para 2-3. Had mens rea been at issue, I would have testified as to the complete nature of my dispute with Citigroup. White Decl para 9-10. On March 23, 2007, I called Citigroup at the direction of my counsel, Richard Lawrence, and was told off by someone claiming to be Jennifer Petsche. White Decl para 11. I told this person that, if they wouldn't take my calls at her office, I'd call her at home. White Decl para 11. And, I did. White Decl para 12. But, I didn't intend to "threaten" her. White Decl para 13.

Procedural Background

7) I was indicted in this matter December 11, 2008. Doc 11. Trial was December 9, 2009, to December 18, 2009. Doc 114-137. On December 18, 2009, the jury convicted me on Counts 1, 3, 5 and 6. Doc 137. The conviction on Count 6 was set aside April 10, 2010. United States v. White 2010 US Dist LEXIS 35999 (WD Va 2010) At trial, the jury was instructed that, to find me guilty, they did not have to find that I intended to threaten someone. White (WD Va 2010) @ LEXIS p. 19-29. This jury instruction was upheld on appeal over the dissent of Judge Floyd. United States v. White 670 F3d 498 (4TH Cir 2012).

8) The first 28 USC §2255 motion in this matter was filed January 9, 2013, and denied April 11, 2013. Doc 332, 345. A second 28 USC §2255 motion was filed July 10, 2018, and denied December 10, 2019. Doc 382, 398. Neither raised Counterman as a grounds for relief.

-5-

9) On June 27, 2023, the Supreme Court announced as a new rule of Constitutional law that it violates US Const Amend I to convict a person of transmitting a "true threat" without proving beyond a reasonable doubt a mens rea of recklessness. Counterman. In their concurring opinion, Justices Sotomayor and Gorsuch commented on this case, citing to Judge Floyd's opinion that it was an example of how "speakers whose ideas or views occupy the fringes have more to fear [from threat prosecutions] for the violent and extreme rhetoric, even if intended simply to convey an idea or express displeasure, is more likely to strike a reasonable juror as threatening." Counterman citing White (4th Cir 2012) (Floyd, dissent).

10) Since Counterman renders my convictions in this matter on Counts 1 and 5 un-Constitutional, I now move this Court for vacatur.

Argument

Standard

11) 28 USC §2255(a) allows "[a] prisoner in custody under a sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" to "move the court which imposed the sentence to vacate, set aside or correct the sentence." In Re: McNeill 68 F4th 195 (4th Cir 2023). 28 USC §2255(h) requires that

-6-

"[a] second or successive motion must... contain... (2) [a claim based upon] a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." In Re: Graham 61 F4th 433 (4th Cir 2023). A "case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Graham citing In Re: Thomas 988 F3d 783 (4th Cir 2021). A "new substantive rule" that "alters the range of conduct... that the law penalizes" is retroactive. Thomas citing Welch v. United States 136 SCt 1257 (2010), Schriro v. Summerlin 542 US 348 (2004). This includes "constitutional determinations that place particular conduct... beyond the State's power to punish." Thomas citing Schriro. Counterman is such a retroactive new rule of Constitutional law.

12) It violates US Const Amend I to convict a person of transmitting a threatening communication without requiring the jury to find a mens rea of recklessness beyond a reasonable doubt. Counterman.

13) Failure to instruct a jury on every element of an offense violates US Const Amend V and VI. United States v. Lindberg 39 F4th 151 (4th Cir 2022). "Criminal convictions must rest upon a jury determination that the defendant is guilty of every element of the crime of which he is charged beyond a reasonable doubt," Lindberg citing United States v. Gaudin 515 US 506 (1995) ("The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime of which he is charged.")

-7-

The right to a jury trial is a fundamental aspect of our judicial system. Lindberg citing Duncan v. Louisiana 391 US 145 (1968). Gaudin ("[T]he right to a jury trial] was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties.") And, it extends to all the elements of a crime with which a defendant is charged, including mixed questions of law and fact. Gaudin (discussing the "historical and constitutionally guaranteed right of criminal defendants to demand that the jury decide guilt or innocence on every issue, which includes application of the law to the facts.")

14) A post-conviction claim of failure to instruct the jury as to every element of the crime must meet the harmless error standard of Brecht v. Abrahamson 507 US 619 (1993); United States v. Said 26 F4TH 653 (4TH Cir 2022) citing Davis v. Ayala 576 US 257 (2015). This means that a petitioner must show actual prejudice. Davis citing Calderon v Coleman 525 US 141 (1998). When "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding, [the court] should not find the error was harmless." Neder v. United States 527 US 1 (1999). When a defendant "sought to present evidence on the matter" but couldn't and was "prevented from arguing [the omitted element] to the jury," the error was not harmless. Lindberg.

-8-

Application To Count 5

15) If mens rea had been recognized as an element of 18 USC §875(c) in 2009, I would have testified that I was using strong language on my website to organize an aggressive and confrontational protest of Kathleen Kerr, not to physically threaten her, and, I called Kerr's office to further organize that protest, not to physically threaten her. My statement would then have found corroboration in the fact that no one I called other than Bedgar perceived a threat, Bedgar's weird demeanor and melodramatic testimony, my statements to the FBI and the fact that no one had ever, to my knowledge, been threatened or subjected to violence as a result of my statements, the fact that the "threatening" caller didn't call at the same time as me, the high volume of calls, the "loss" of the caller ID records, the fact that my phone wasn't blocked when I called Kerr's office, and the differing names used for Kerr's husband. The jury could have weighed my testimony against Bedgar's and easily concluded that Bedgar is a slightly histrionic woman with a penchant for fantasy that confused and exaggerated my actual call in order to get attention and generate some excitement in her life. My attorneys could have argued that I was only intending to organize a protest had mens rea been at issue, but, couldn't because they were barred by caselaw. And, even without my testimony, there was enough evidence that a juror considering mens rea could have found me at most merely negligent in the language I used to protest Kerr.

16) My conviction on Count 5 violated US Const Amend I because no jury

-9-

has ever found beyond a reasonable doubt that I intended to threaten Kerr. It violated US Const Amend V and VI because I was unable to put on evidence of mens rea or argue mens rea to the jury, and because the jury was not properly instructed. My conviction on Count 5 must be vacated and set for a new trial, if the United States wishes to retry me.

Application To Count 1

17) Unlike with Kerr, with Petsche there is no dispute as to what I said. The dispute is over the context of what I said. Because the issue before the Court at trial was whether or not the words uttered were an objective threat, and, the context wouldn't change the words, my attorneys didn't have me testify. And, yet the context, an argument with someone claiming to be Petsche who I told I would call at home, was radically different from the false narrative the United States presented at trial. Had the jury known of Petsche's vicious verbal attack on me that preceded my comments, they would have viewed my comments as the continuation of an argument, not as an intentional threat to physically harm Petsche.

18) Like with Kerr, my conviction on Count 1 violated US Const Amend I because no jury has ever found beyond a reasonable doubt that I intended to threaten Petsche. It violated US Const Amend V and VI because I was unable to put on evidence of mens rea or argue mens rea to the jury, and because the jury was not properly instructed. My conviction on Count 1 must be vacated

-10-

and set for a new trial, if the United States wishes to retry me.

I Must Be Resentenced On Count 3

19) In this matter, I was sentenced as a Category I Level 19 offender on Count 3 due to a three-level grouping enhancement pursuant to USSG § 3D1.4. The vacatur of Counts 1 and 5 reduce me to a Category I Level 16 offender. My 33 month sentence should be reduced to account for my new guidelines of 21 to 27 months. Said

Respectfully Submitted,

William A White #13888-084
FCI-Cumberland
PO Box 1000
Cumberland, MD 21501

CERTIFICATE OF SERVICE

I hereby certify that this Motion to Vacate was mailed to the Clerk of the Court and the US Attorney's Office for the Western District of Virginia, 1st Class Postage Prepaid, this ___ day of _____, 2024.

William A White

-11-



